# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# LEXINGTON

CRIMINAL ACTION NO. 5:25-CR-00077-KKC

UNITED STATES OF AMERICA                                             PLAINTIFF

V.                        **PLEA AGREEMENT**

OSAMA OMAR QASEM                                                     DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter guilty pleas to Counts 1, 2, 6, and 8 of the Indictment. Counts 1 and 2 charge violations of 21 U.S.C. § 841(a)(1), distribution of 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine. Count 6 charges a violation of 21 U.S.C. § 841(a)(1), possession with the intent to distribute 50 grams or more of methamphetamine (actual). Count 8 charges a violation of 18 U.S.C. § 933(a)(1), trafficking in firearms. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss Counts 3, 4, 5, and 7 of the Indictment.

2. The essential elements of Counts 1 and 2 are as follows:

    (a) That the defendant knowingly and intentionally distributed a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance;

    (b) That the substance was, in fact, a mixture or substance containing a detectable amount of methamphetamine; and

    (c) The amount of the mixture or substance containing a detectable amount of methamphetamine was at least 50 grams.

3. The essential elements of Count 6 are as follows:

    (a) That the defendant knowingly and intentionally possessed methamphetamine (actual), a Schedule II controlled substance;

    (b) That the defendant possessed the methamphetamine (actual) with the intent to distribute it; and

    (c) That the weight of the methamphetamine (actual) was at least 50 grams.

4. The essential elements of Count 8 are as follows:

    (a) That the defendant knowingly shipped, transported, transferred, caused to be transported or disposed of a firearm to another person;

    (b) That the shipping, transporting, transferring, causing to be transported or disposition of the firearm was in or otherwise affecting interstate commerce; and

    (c) That the defendant knew or had reasonable cause to believe that the use, carrying, or possession of the firearm by the recipient would constitute a felony.

5. As to Counts 1, 2, 6, and 8 of the Indictment, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

(a) Beginning in January of 2025 and continuing through March of 2025, law enforcement utilized a confidential informant (CI) to conduct four controlled drug and firearm transactions with the Defendant in Fayette County in the Eastern District of Kentucky.

(b) Prior to the first transaction, the CI contacted the Defendant to inquire about purchasing controlled substances from the Defendant. Through this conversation, the CI also asked about potential firearms that the Defendant would be able to sell. At that time, the Defendant informed the CI that the Defendant could contact his "arms dealer" and provide the exact firearm the CI wants. The Defendant also

explained that he could "custom order" any "strap" (referring to firearms) if the CI wanted something "clean and new." The Defendant then confirmed the price for the drug transaction. Throughout the investigation, the CI indicated to the Defendant that the firearms were intended for associates of the CI who were engaging in drug trafficking.

(c) Following this initial conversation, the CI met with the Defendant on the following occasions and purchased the below-described controlled substances and/or firearms:

- On January 21, 2025, the CI purchased 112.276 grams of methamphetamine from the Defendant. During the same transaction, the Defendant separately sold the CI a stolen Smith & Wesson, Model: Bodyguard 380, Cal.: .380 pistol, SN: KJA4895.

- On February 7, 2025, the Defendant met with another CI and sold to them 111.038 grams of methamphetamine. In the same transaction, the Defendant separately sold a Hi-Point, Model: CF380, Cal.: 380 ACP, pistol, SN: P8184518 to the CI.

- On February 25, 2025, the Defendant sold to the CI 292.3 grams of methamphetamine. During the transaction, the Defendant brought with him a firearm along with a loaded magazine, intending to sell it to the CI. The CI declined to purchase the firearm but discussed with the Defendant the possibility of a future sale.

- On March 7, 2025, the Defendant sold to the CI 222.65 grams of methamphetamine. The substance was later confirmed by the DEA lab to be 91% pure, resulting in a pure substance weight of 202.61 grams of methamphetamine (actual). Along with the methamphetamine (actual), the Defendant also sold to the CI a Phoenix Arms Co., Model: HP22A, Cal.: 22LR, pistol, SN: 4482825.

(d) After the fourth controlled transaction, the CI contacted the Defendant to set up a fifth controlled buy for March 18, 2025. The night before the transaction, the Defendant inquired as to whether the CI was interested in other firearms to purchase. The CI expressed interest in some of these firearms. On the day of the intended transaction, the Defendant arrived at the agreed upon meet location where ATF agents and local law enforcement were waiting. Inside the vehicle, agents observed a Keltec, CNC Industries, Inc., Model: PLR-22, Cal.: .22, pistol,

> SN: U2R31, between the driver's seat and center console. The firearm, a semiautomatic weapon, was chambered and loaded with 25 rounds of ammunition and equipped with a large capacity magazine. In addition to the firearm, agents also located 136.63 grams of cocaine and 237.43 grams of methamphetamine that the Defendant was intending to distribute. The methamphetamine was later confirmed by the DEA lab to 85% pure, resulting in a pure substance weight of 201.81 grams of methamphetamine (actual).
>
> (e) The Defendant admits that he possessed the methamphetamine (actual) seized by agents on March 18, 2025, with the intent to distribute. The Defendant further admits that he knowingly transferred firearms to the CI during three of the above-described controlled transactions and that he knew or had reason to believe that the CI and the intended recipient's use, carrying, or possession of the firearms would constitute a felony.

6. The statutory punishment for Counts 1 and 2 is not less than 5 years imprisonment, not more than 40 years imprisonment, not more than a $5,000,000 fine, and not less than 4 years of supervised release. The statutory punishment for Count 6 is not less than 10 years imprisonment, not more than life imprisonment, not more than a $10,000,000 fine, and not less than 5 years of supervised release. The statutory punishment for Count 8 is not more than 15 years imprisonment, not more than a $250,000 fine, and not more than 3 years of supervised release. In addition, a mandatory special assessment of $400 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of sentencing.

7. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guideline calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

> (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2025, Manual, will determine the Defendant's guidelines range.

    (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the facts set forth in paragraph 5 as well as the provided discovery materials.

    (c) Pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(4), the base offense level for Counts 1, 2, and 6 is at least 32 as the offenses and relevant conduct involved at least 3,000 kilograms of converted drug weight.

    (d) Pursuant to U.S.S.G. § 2D1.1(b)(1), the base offense level for Counts 1, 2, and 6 is increased by 2 levels as the Defendant possessed a dangerous weapon.

    (e) Pursuant to U.S.S.G. § 2K2.1(a)(4), the base offense level for Count 8 is 20 as the offense involves a semiautomatic firearm with a large capacity magazine and the Defendant was a prohibited person at the time of the offense.

    (f) Pursuant to U.S.S.G. § 2K2.1(b)(1), the offense level for Count 8 is increased by at least 2 levels as the offense and relevant conduct involved at least 3 firearms.

    (g) Pursuant to U.S.S.G. § 2K2.1(b)(4)(A), the offense level for Count 8 is increased by 2 levels as the offense and relevant conduct involved a stolen firearm.

    (h) Pursuant to U.S.S.G. § 2K2.1(b)(6)(C), the offense level for Count 8 is increased by 5 levels as the Defendant transported, transferred, sold, or otherwise disposed of two or more firearms or attempted or conspired to transport, transfer, sell, or otherwise dispose of two or more firearms, knowing or having reason to believe that such conduct would result in the receipt of the firearms by an individual who intended to use or dispose of the firearms unlawfully.

    (i) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

8. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2. The Defendant also will not seek a sentence below the advisory sentencing guidelines range as determined by the Court at sentencing.

9. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant waives the right to appeal any determination made by the Court at sentencing with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the higher of the advisory sentencing guideline range as determined by the Court at sentencing or the statutory minimum sentence of 120 months. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

10. The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the property listed in the forfeiture allegation of the Indictment. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offense to which he is pleading guilty, as set forth in the forfeiture allegation of the Indictment. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including but not limited to executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he already has submitted. If the Defendant fails to surrender and forfeit the assets identified for forfeiture herein, he consents to the forfeiture of any other property of his up to the amount of the value of the

assets identified for forfeiture, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

11. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

12. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea

agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

13. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

14. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

15. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

16. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

17. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

PAUL C. McCAFFREY
FIRST ASSISTANT
UNITED STATES ATTORNEY

Date: 1-12-26

By: _____
Francisco J. Villalobos II
Assistant United States Attorney

Date: 01-07-26

_____
Osama Omar Qasem
Defendant

Date: 1/7/26

_____
Andrew Sparks
Attorney for Defendant